# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. KIMBERLEY HAMPTON | ) ) ) | |
| Movant, | ) ) | |
| v. | ) ) | No. 1:18-mc-00121 (JEB/GMH) |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Respondent. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.*, movant Dr. Kimberley Hampton filed a motion to quash two subpoenas for her financial records issued by the U.S. Securities and Exchange Commission (the "SEC") to two financial institutions at which she holds accounts. Judge James E. Boasberg then referred the matter to the undersigned for resolution. For the following reasons, the motion to quash is denied.

## I. BACKGROUND

On September 19, 2017, the SEC issued a formal order directing an investigation of alleged fraudulent or deceptive conduct in connection with the offer of sale of securities by Prestige Global Trading, Ltd., and other persons. ECF No. 6 at 2. The investigation developed evidence that in October and November 2017, Russell H. Craig and OneStep Financial Services ("OneStep") obtained approximately $460,000 from five or more investors to be used for a real estate transaction, guaranteeing them a 50% profit and asserting that their investments were secured by certain real property. *Id.* at 2–3. Mr. Craig set up an escrow account into which he transferred those funds. *Id.* at 3. He later transferred the funds to individuals who had no connection with the

real estate transaction. Specifically, bank records indicate that in October and November 2017, Mr. Craig transferred approximately $335,000 of those funds to an attorney escrow account in the name of Daniel R. Meachum & Associates. *Id.* Approximately $175,000 was then transferred from that attorney escrow account to accounts belonging to Movant at PNC Bank, N.A., and Nova Credit Union. *Id.*; ECF No. 6-1 at 9. The SEC believes that the $460,000 in funds were obtained from the original investors in violation of Section 10(b) of the Securities Exchange Act of 1933 (the "Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated under the Exchange Act, 17 C.F.R. § 240.10b-5, and Section 17(a)(1) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a)(1). ECF No. 6 at 2–3.

On August 6, 2018, the SEC served subpoenas on PNC Bank and Nova Credit Union seeking Movant's bank records for the period between January 2017 and July 2018 in order to trace funds flowing from the attorney escrow account into Movant's accounts, and to help identify any additional investor funds that may have been transferred into those accounts. *Id.* at 3–4; ECF No. 6-1 at 23–26 (subpoena to PNC Bank), 27–30 (subpoena to Nova Credit Union). On that same date, the SEC sent Movant a customer notice (which, according to the SEC's verified opposition to the motion to quash, she received by August 8, 2018) informing her that records from her accounts at PNC Bank and Nova Credit Union were being sought in connection with an investigation into violations of securities laws in the matter of Prestige Global Trading, Ltd. ECF No. 6 at 4; ECF No. 6-1. The attachments, which included the two subpoenas to the financial institutions, made clear that the SEC was interested in records of deposits, withdrawals, and payments of $1000 or more between January 1, 2017, and July 31, 2018.[1] ECF No. 6-1 at 9–10, 25, 29.

---

[1] The attachments also included a subpoena directed to Movant, herself, and the motion to quash states that it challenges "the subpoena issued by the United States Securities and Exchange Commission." ECF No. 1 at 1.

The notice further informed Movant of how to file a motion to quash the subpoenas to the banks pursuant to RFPA. ECF No. 6-1. It stated that Movant must (1) file a sworn statement in support of her motion, (2) include certain information in the sworn statement, such as that she owned the accounts from which records were being sought and the grounds on which she challenged the subpoena, (3) file the motion and sworn statement in an appropriate district court by "the earlier of ten days from the date of service or fourteen days from the mailing of the notice," and (4) serve the SEC with the motion and sworn statement. *Id.* at 2. The notice included a form motion and form sworn statement. *Id.*

According to the SEC, Movant mailed a motion dated August 16, 2018, to the SEC and included a certificate of service stating that it had been "sent . . . to the United States Courthouse." *Id.* at 4. Counsel for the SEC contacted the Clerk's Office of this Court on August 29, 2018, to inquire about the filing, but the Clerk's Office responded that it had no record of such a submission. *Id.* Counsel then informed Movant that this Court had not received her motion. *Id.* Thereafter, Movant mailed a motion to quash the subpoenas on August 31, 2018, to the SEC and the "U.S. Courthouse." *Id.* at 5. The Clerk's Office received and filed the motion on September 4, 2018.[2] ECF No. 1 at 1.

---

However, it appears that her motion actually seeks to quash the two subpoenas directed to the financial institutions. First, she cites RFPA as a basis for the motion, and that statute applies only to requests directed to financial institutions seeking the financial records about a customer of the institution. 12 U.S.C. § 3403 ("No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter."). Second, in its opposition, the SEC addresses the motion as seeking to quash the subpoenas to PNC Bank and Nova Credit Union. The Court provided Movant an opportunity to respond to the opposition (Minute Order dated Oct. 2, 2018), but she failed to file any such reply. The undersigned therefore addresses the motion as one made pursuant to RFPA to quash the subpoenas served on PNC Bank and Nova Credit Union. The Court notes, however, that the standard for quashing an administrative subpoena that is not subject to the strictures of RFPA is similar to the standard under RFPA: an administrative subpoena should be enforced where "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

[2] The docket reflects September 4, 2018 as the date the submission was filed, although the entry on the docket was not made until September 12, 2018. ECF No. 1.

The motion to quash the subpoenas pursuant to 12 U.S.C. § 3410 states that the subpoenas were issued by the SEC, "a non-governmental entity," seeking access to Movant's financial records. *Id.* The motion contends that "there is no direct nexus between the information requested and the corporate entities averred to," that she "is without sufficient information and cause which would enable her to produce such records," that there are "no allegations of criminal or civil liability," and that the subpoena "may be a direct invasion of privacy." *Id.* Pursuant to an order of the Court, the SEC filed a response on October 1, 2018. ECF No. 5. The Court invited Movant to file a reply, but she failed to do so by the deadline set in the order.[3] Minute Order dated Oct. 2, 2018.

## II.   LEGAL STANDARD

RFPA permits the government access to "the financial records of a customer" of a financial institution pursuant to an administrative subpoena if (1) "there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry," and (2) a copy of the subpoena "has been served on the customer or mailed to [her] last known address on or before the date on which the subp[o]ena . . . was served on the financial institution," accompanied by a notice informing the customer of her rights to challenge the subpoena. 12 U.S.C. § 3405(1), (2). To quash an administrative subpoena, the customer must, "[w]ithin ten days of service or within fourteen days of mailing" of the subpoena, "file a motion to quash" in "the appropriate United States district court" that

> contain[s] an affidavit or sworn statement
>
> (1)   stating that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought; and

---

[3] Because RFPA sets a deadline for the court's decision at seven calendar days after any opposition to a motion to quash is served, 12 U.S.C. § 3410(b), the response time allotted Movant was necessarily short. In any case, as of the filing of this opinion, Movant has not filed any response.

4

> (2) stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.

12 U.S.C. § 3410(a). A challenge pursuant to section 3410 is "the sole judicial remedy available to a customer to oppose disclosure of financial records pursuant to [RFPA]." 12 U.S.C. § 3410(e). If no such motion is filed, "the records or information requested [in the subpoena] will be made available" after "the expiration of ten days from the date of service or fourteen days from the date of mailing" the required notice. 12 U.S.C. § 3405(2).

"A [bank] customer's ability to challenge a subpoena is cabined by [those] strict procedural requirements," *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984), and failure to follow those procedures is sufficient reason to deny a motion to quash. *See, e.g.*, *Gutierrez v. Soc. Sec. Admin. Office of Inspector Gen.*, No. 2:15-mc-0075, 2015 WL 5138105, at *2–3 (E.D. Cal. Sept. 1, 2015) (denying motion to quash based on movant's failure to submit affidavit or sworn statement made under penalty of perjury and failure to timely file motion); *Siegfried v. Inspector Gen. of U.S. Dep't of Agric.*, 163 F. Supp. 2d 170, 173 (E.D.N.Y. 2001) (denying motion on timeliness grounds); *Friedman v. Inspector Gen. of U.S. Dep't of State*, Civ. A. No. 92-2312, 1992 WL 321510, at *1 (D.D.C. Oct. 21, 1992) ("[T]he Court finds that untimeliness is sufficient grounds for denying a motion to quash.").[4] Indeed, a court may deny a non-conforming motion to quash without receiving a response from the government. 12 U.S.C. § 3410(b).

---

[4] Some cases have asserted that a court lacks subject matter jurisdiction to address an untimely challenge to a subpoena seeking records pursuant to RFPA. *See, e.g.*, *Swann v. Sec'y, U.S. Dep't of Housing and Urban Dev.*, No. 05-492, 2006 WL 148738, at *1 (D.D.C. Jan. 19, 2006). However, the better view in light of the Supreme Court's jurisprudence on the issue, *see, e.g.*, *Hamer v. Neighborhood Hous. Serv. of Chicago*, __ U.S. __, __. 138 S. Ct. 13, 20 n.9 (2017) ("A rule is jurisdictional if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional. . . . [W]e have made plain that most statutory time bars are nonjurisdictional."), is that such untimeliness does not divest a federal court of jurisdiction, but merely provides a ground to deny the motion. *See Douglas v. United States*, 410 F. Supp. 2d 292, 294–95 (S.D.N.Y. 2006).

"There are only three grounds on which a district court may quash a subpoena: '(1) the agency's inquiry is not a legitimate law enforcement inquiry[;] (2) the records requested are not relevant to the agency's inquiry[;] or (3) the agency has not substantially complied with RFPA.'" *Thomas v. U.S. Dep't of Homeland Sec.*, 876 F. Supp. 2d 1, 6 (D.D.C. 2012) (alterations in original) (quoting *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir.1989)); *see also, e.g., Rodriguez v. Soc. Sec. Admin.*, No. 14-mc-6, 2014 WL 2960539, at *2 (E.D. Cal. June 30, 2014). If the court requires a response from the government, it must resolve the motion to quash "within seven calendar days of the filing" of that response. 12 U.S.C. § 3410(b). The movant "cannot appeal an adverse determination until the [g]overnment has completed its investigation." *Jerry T. O'Brien, Inc.*, 467 U.S. at 745 (citing 12 U.S.C. § 3410(d)).

## III. DISCUSSION

### A. Procedural Deficiency

The SEC served the subpoenas on Movant's banks and sent the notice to Movant on August 6, 2018. ECF No. 6 at 7. Movant received the notice on August 7 or 8, 2018.[5] *Id.* Movant had to file her motion to quash, then, by August 18, 2018 (ten days from service)[6] or August 20, 2018 (fourteen days from mailing). However, a motion to quash was not filed until September 4, 2018. ECF No. 1; *see, e.g., Kareem v. Fed. Deposit Ins. Co.*, 482 F. App'x 594, 595 (D.C. Cir. 2012) (per curiam) (noting that a submission is deemed filed when it is received by the Clerk of Court). Indeed, Movant did not sign the motion that was eventually filed until August 30, 2018. ECF No. 1 at 2.

---

[5] The SEC's verified opposition represents that it sent the notice to three addresses associated with Movant. ECF No. 6 at 4. Two of those arrived on August 7, 2018, and one arrived on August 8, 2018. *Id.*

[6] Rule 5(b)(2)(C) of the Federal Rules of Civil Procedure states that, when a paper is served by "mailing it to the person's last known address," service "is complete upon mailing." However, the statute makes a distinction between "mailing" and "service." 12 U.S.C. § 3410(a). The undersigned assumes without deciding that, under the statute, service by mailing is complete when the paper is received.

To be sure, Movant sent the SEC a motion dated August 16, 2018, and that motion indicated that it had also been sent to this Court. ECF No. 6 at 4. But no such motion was received and filed by the Court. In this case, any such failed attempt to timely file a motion is not sufficient justification to extend the time period laid out in the statute. To warrant equitable tolling of that time limitation, Movant must show that she pursued her rights diligently and that an extraordinary circumstance prevented her timely filing. *See, e.g.*, *Miller v. Downtown BID Servs. Corp.*, 281 F. Supp. 3d 15, 20 (D.D.C. 2017). Courts have found that a litigant can meet the first prong of the equitable tolling test when she follows up on a time-sensitive court filing to ensure that it has been received. *See, e.g.*, *Summers v. Howard Univ. Hosp.*, 300 F. Supp. 3d 268, 271 (D.D.C. 2018) (plaintiff had not justified equitable tolling where the excuse for late filing was a delay by the Court but plaintiff "d[id] not appear to have followed up with the court to confirm whether her complaint was filed"); *Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 840 F. Supp. 2d 192, 197 (D.D.C. 2012) (litigant "diligently pursued his claim" where he "contact[ed]—on his own accord—the Clerk's Office to check on the status of his motion" to proceed *in forma pauperis* and filed a corrected complaint within days of learning the motion had been denied); *Butler v. Shapiro*, 839 F. Supp. 2d 252, 255–56 (D.D.C. 2012) (equitably tolling limitations period where litigant contacted the agency to determine whether administrative complaint had been filed and, after learning it had been sent to wrong office, promptly refiled complaint);[7] *cf. Miller*, 281 F. Supp. 3d at 20 ("[A] plaintiff must do more to show that she 'actively pursued h[er] judicial remedies,' such as showing that she 'fil[ed] a defective pleading during the statutory period.'" (alterations in original) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))). The

---

[7] The filings that the District Court cites in *Butler v. Shapiro* make clear that plaintiff's counsel learned of the error when he contacted the agency to check on the filing. Letter of Kevin L. Owen dated Mar. 25, 2010, *Butler v. Shapiro*, No. 11-cv-574 (Sept. 9, 2011), ECF No. 9-27.

Supreme Court has noted that the time limits included in RFPA are particularly significant: "Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations." *Jerry T. O'Brien, Inc.*, 467 U.S. at 745. Here, Movant knew of the tight time limits, but nevertheless failed to follow up on the filing of the motion; rather, counsel for the SEC contacted the Clerk of Court to inquire about her challenge and then contacted Movant to inform her that the motion had not been filed. Movant has not shown that she diligently pursued her rights; equitably tolling the strict time limitations in the statute would therefore be inappropriate.

This procedural error is sufficient to deny the motion. *See, e.g.*, *Gutierrez*, 2015 WL 5138105, at *2–3; *Siegfried*, 163 F. Supp. 2d at 173 (E.D.N.Y. 2001); *Friedman*, 1992 WL 321510, at *1.

### B. Substantive Deficiencies

The motion is substantively deficient, as well.

First, the statute lays out quite clearly the information that must be contained in a supporting affidavit, including a statement "that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought," as well as the customer's "reasons for believing that the financial records sought are not relevant" to a legitimate law enforcement inquiry or that the agency has not substantially complied with the statute. 12 U.S.C. § 3410(a)(1), (2). Indeed, the form the SEC provided with the notice they sent her included spaces in which she could fill in that information. ECF No. 6-1 at 33. However, Movant's affirmation includes none of that information. She does not affirm that she is the customer whose records have been sought. ECF No. 1 at 1. She does not provide evidence or argument that the information is not relevant to a legitimate law enforcement inquiry. Instead, she asserts that "there

is no direct nexus between the information requested and the corporate entities averred to" and "no allegations of criminal or civil liability." ECF No. 1 at 1. That is not sufficient. *See, e.g.*, *Giorgi v. McLaughlin*, No. 1986, 1988 WL 9252, at *1 (N.D.N.Y. Jan. 25, 1988) (statement that the subpoena "does not indicate any fact or circumstance which would make my financial records relevant to the investigation" is insufficient); *Panaro v. U.S. Sec. & Exchange Comm'n*, No. CV-86-4122, 1987 WL 15951, at *2 (E.D.N.Y. Aug. 5, 1987) (statement that records "are not relevant to a legitimate law enforcement inquiry because such action is contrary to the fifth and sixth amendments" is insufficient).

Nor does Movant suggest that the SEC has failed to comply with the statute. The closest she comes is an assertion that the SEC is a "non-governmental entity," perhaps suggesting that the agency is not governed by RFPA. ECF No. 1 at 1. Whatever the intended meaning of the statement, it is baseless. The SEC is specifically empowered by Congress to conduct investigations and take evidence of suspected violations of federal securities laws by sections 19(c) and 20(a) of the Securities Act, 15 U.S.C. §§ 77s(c), 77t(a), and sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a), (b). Moreover, as the Supreme Court noted in *Jerry T. O'Brien*, RFPA's procedures of have applied to the SEC since 1980. 467 U.S. at 746; *see also* 12 U.S.C. § 3422 ("Except as provided in the Securities Exchange Act of 1934, this chapter shall apply with respect to the Securities and Exchange Commission." (internal citation omitted)). Thus, Movant has failed to make "an initial showing that access may be improper." *Hancock v. Marshall*, 86 F.R.D. 209, 211 (D.D.C. 1980) (quoting H.R. Rep. No. 1383, 95th Cong., 2d Sess. 53 (1978)).

In any case, the SEC's submission establishes that the motion to quash should be denied. The agency complied with the procedural requirements of the statute, mailing a copy of the two

9

subpoenas to three addresses associated with Movant on the same date they were served on PNC Bank and Nova Credit Union. ECF No. 6 at 4; ECF No. 6-1 at 1. The notice attaching the subpoenas followed the guidelines included in the statute, repeating the wording of the "required notice" included in the statute almost verbatim. *Compare* 12 U.S.C. § 3405(2) *with* ECF No. 6-1 at 1–2.

Substantively, too, the subpoenas are proper. They were issued in connection with a "legitimate law enforcement inquiry." The phrase is defined in the statute as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." 12 U.S.C. § 3401(8). Here, the SEC is investigating possible violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, and Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1). "Congress has vested the SEC with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *Jerry T. O'Brien, Inc.*, 467 U.S. at 741. As indicated above, it is authorized to conduct such investigations and take evidence of such violations. 15 U.S.C. §§ 77s(c), 77t(a), 78u(a), (b). Moreover, it has done so here pursuant to a formal order (ECF No. 6 at 2), by which the SEC "designates members of the staff to act as officers of the Commission in an investigation," Securities and Exchange Commission Division of Enforcement Office of Chief Counsel, *Enforcement Manual* § 2.3.4 (Nov. 28, 2017), https://www.sec.gov/divisions/en-force/enforcementmanual.pdf. That showing is more than sufficient to establish the *bona fides* of the law enforcement investigation. *See, e.g.*, *Burton v. U.S. Sec. & Exchange Comm'n*, No. 2:17-CV-395, 2017 WL 2455065, at *1 (D. Utah June 6, 2017) (finding it "clear that the[] subpoenas

10

arise in the course of a legitimate law enforcement inquiry" where "[t]he SEC issued a Formal Order in th[e] investigation pursuant to Section 20(a) of the Securities Act . . . and Section 21(a) of the Exchange Act"); *Kinseth v. U.S. Sec. & Exchange Comm'n*, No. 09-mc-87, 2009 WL 4110209, at *2 (N.D. Iowa Nov. 24, 2009) ("Here, the investigation is being conducted pursuant to a formal order entered by the SEC in accordance with its authority to undertake investigations to determine whether violations of the federal securities law have occurred. The Court concludes that the subpoenas were issued pursuant to a legitimate law enforcement inquiry.").

The remaining question is whether "there is reason to believe that the records sought are relevant" to that inquiry. 12 U.S.C. § 3405(1); *see also Feiner v. U.S. Sec. & Exchange Comm'n*, 914 F. Supp. 2d 474, 477 (S.D.N.Y. 2012) (court must consider "whether the SEC has a reasonable belief that the requested documents are relevant to that inquiry"). "Bank records are relevant to a government investigation for purposes of RFPA if they 'touch on a matter under investigation[,]' even if they 'have only a loose connection' to the core of the inquiry." *Nicksolat v. U.S. Dep't of Transportation*, 277 F. Supp. 3d 122, 128 (D.D.C. 2017) (alteration in original) (quoting *Sandsend*, 878 F.2d at 882). And "[a]n agency 'can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Sandsend,* 878 F.2d at 882 (quoting *Morton Salt*, 338 U.S. at 642). The SEC easily meets that standard here. As it explains, the agency has evidence indicating that Mr. Craig violated federal securities laws in connection with procuring funds from individuals for a purported real estate transaction. ECF No. 6 at 2–3. Some of those funds ended up in the bank accounts belonging to Movant from which the SEC seeks records. *Id.* at 3. The SEC seeks records from those accounts for a period beginning approximately ten months prior to and ending approximately seven months after the transfers of which is it aware. *Id.*; ECF No. 6-1 at 25, 29. Those records may help the agency to trace the funds that Mr. Craig allegedly

fraudulently procured and help it identify additional individuals involved in illegal conduct, as well as the location of funds potentially subject to disgorgement. *See In re U.S. Sec. & Exchange Comm'n Private Investigation/Application of John Doe re Certain Subpoenas*, No. M8-85, 1990 WL 119321, at *2 (S.D.N.Y. Aug. 10, 1990) ("The SEC has shown that the plaintiff had control over brokerage accounts in which suspect trading occurred. That is enough to establish reasonable belief when one considers that the statute deals with *investigative* subpoenas. Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct."); *see also Flatt v. U.S. Sec. & Exchange Comm'n*, No. 10-60073, 2010 WL 1524328, at *4 (S.D. Fla. Apr. 14, 2010) (refusing to quash investigative subpoena seeking bank records of all transactions connected with an individual's account where the SEC asserted that it needed the bank records "to trace the path of the proceeds of the alleged illegal transactions committed by" the target corporation). They may also help the agency to determine "when the alleged scheme started." *Tabet v. U.S. Sec. & Exchange Comm'n*, No. 12cv1596, 2012 WL 3205581, at *4 (S.D. Cal. Aug. 6, 2012).

The SEC has established that the information sought in the subpoenas issued to PNC Bank and Nova Credit Union are relevant to a legitimate law enforcement inquiry. There are therefore no grounds on which to quash those subpoenas.

## CONCLUSION

For the foregoing reasons, the Movant's Motion to Quash the Subpoena is **DENIED**.

**SO ORDERED.**

Date: October 5, 2018

                                                                    _____
                                                                    G. MICHAEL HARVEY
                                                                    United States Magistrate Judge